1  Andrew N. Kohn, Esq., SBN 166385
   **PETTIT KOHN INGRASSIA &**
2  **LUTZ PC**
   12250 El Camino Real, Suite 350
3  San Diego, CA 92130-3071
   (858) 755-8500/ FAX (858) 755-8504
4  akohn@pettitkohn.com

5

6  Attorneys for Plaintiff **EMPIRE FIRE**
   **& MARINE INSURANCE**
7  **COMPANY**

```
FILED
JAN 1 0 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    K N IX        DEPUTY
```

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 EMPIRE FIRE & MARINE            CASE NO.: **'08 CV 0056 IEG AJB**
   INSURANCE COMPANY,
12                                 **PLAINTIFF EMPIRE FIRE &**
            Plaintiff,             **MARINE INSURANCE COMPANY'S**
13                                 **COMPLAINT FOR DECLARATORY**
   v.                              **RELIEF**
14
   JAMES A. NGUYEN, an individual;
15 BINH HUU NGUYEN, an
   individual; DIANE HOA NGUYEN,
16 an individual; RYAN BALDWIN, an  Dept.:
   individual; JAYCE BALDWIN an     District Judge:
17 individual; and DOES 1 through 200, Magistrate Judge:
   Inclusive,                      Complaint Filed:
18                                 Trial Date:        Not Set
            Defendants.
19

20       Comes Now Plaintiff EMPIRE FIRE & MARINE INSURANCE

21 COMPANY, a Nebraska corporation (herein after "Empire"), and alleges the

22 following claims against Defendants JAMES A. NGUYEN; BINH HUU

23 NGUYEN; DIANE HOA NGUYEN; RYAN BALDWIN, and JAYCE BALDWIN

24 (collectively, "Defendants") as follows:

25                      **GENERAL ALLEGATIONS**

26 **A.    Jurisdiction and Venue:**

27       1.    Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332,

28 based upon complete diversity of citizenship between Plaintiff Empire and

2600-1102

                                     1

1  Defendants.  Jurisdiction is also proper under 28 U.S.C. § 2201, as Empire seeks a

2  declaratory judgment.  The amount in controversy exceeds $75,000, exclusive of

3  interest and costs, as is more fully set forth below.

4    2.    This Court has personal jurisdiction over all the Defendants, who

5  either maintain residence and/or are domiciled in California, or who have minimum

6  contacts with California in connection with the events giving rise to this action

7  and/or the underlying claim being made by RYAN and JAYCE BALDWIN against

8  Defendants JAMES A. NGUYEN, BINH HUU NGUYEN, and DIANE HOA

9  NGUYEN, among others.

10    3.    Pursuant to 28 U.S.C. § 1391, venue of this action is proper within this

11  District, as the transactions and occurrences giving rise to the claims alleged herein

12  took place within this District, and Empire is informed and believes, and thereupon

13  alleges, that all Defendants reside within the jurisdictional boundaries of this

14  District.

15    **B.**    **The Parties:**

16    4.    Empire is and at all times mentioned herein was a corporation, duly

17  incorporated in the State of Nebraska, with its principal place of business in Omaha,

18  Nebraska.  Through its parent corporation Zurich Financial Services, Inc., Empire is

19  duly licensed to do business within the State of California.

20    5.    Empire is informed and believes and thereon alleges that Defendants

21  JAMES A. NGUYEN, BINH HUU NGUYEN, HOA DIANE NGUYEN, RYAN

22  BALDWIN, and JAYCE BALDWIN, (collectively, "Defendants"), are each

23  individuals who each reside and/or resided in the County of San Diego, in the State

24  of California, at the time of the events giving rise to this action.

25    6.    The identities of the remaining Defendants, Does 1 through 100,

26  inclusive, whether individual, corporate, associate, or otherwise, are unknown to

27  Empire, who has sued said Defendants by such fictitious names.  Empire is

28  informed and believes and thereon alleges that each of the Defendants designated as

2

1   Doe is a resident of the State of California, is subject to the personal jurisdiction of

2   this Court, and/or is interested in the relief sought by Empire, but whose true

3   identity and capacity are presently unknown to Empire.

**C.    The Insurance Policy Issued By Empire:**

7.    Defendants BINH HUU NGUYEN and HOA DIANE NGUYEN

obtained a homeowner's insurance policy from Empire numbered ZHO541912-4,

with a policy period beginning on or around July 29, 2005, and ending on or around

July 29, 2006 ("the Policy").  A true and correct copy of the policy, without the

application, is attached hereto as Exhibit "1" and is incorporated herein by

reference.

8.    The Policy generally provides coverage for its insureds for negligent

acts, defined as "occurrences" during the policy period.  However, pursuant to

Section II of the Policy, Personal Liability coverage does not apply to:

> **Expected or Intended Injury**
>
> "Bodily injury" or "property damage" which is expected or intended
> by an "insured even if the resulting "bodily injury" or "property
> damage":
>
> a.    Is of a different kind, quality or degree than initially expected or
> intended; or
>
> b.    Is sustained by a different person, entity, real or personal
> property, than initially expected or intended.

**D.    The April 29, 2006 Shooting:**

9.    On or around April 29, 2006, Defendant JAMES A. NGUYEN, the

then-minor son of BINH HUU NGUYEN and HOA DIANE NGUYEN, was

involved in an altercation with Defendants RYAN and JAYCE BALDWIN.  On

that date, Defendant JAMES A. NGUYEN is alleged, among other things, to have

threatened, assaulted, battered and harassed RYAN and JAYCE BALDWIN.  These

events culminated in Defendant JAMES A. NGUYEN pointing a semi-automatic

3

PLAINTIFF EMPIRE FIRE & MARINE INSURANCE
COMPANY'S COMPLAINT FOR DECLARATORY RELIEF

1  handgun at Defendants RYAN and JAYCE BALDWIN, and firing several rounds

2  of live ammunition from that handgun at both the persons of Defendants RYAN

3  and JAYCE BALDWIN and the vehicle in which both were seated.

4      10.    Defendant RYAN BALDWIN was paralyzed and suffered other

5  personal injuries as a result of bullet wounds received from the handgun fired by

6  Defendant JAMES A. NGUYEN.  Defendant JAYCE BALDWIN suffered

7  personal injuries and witnessed these events.

8      11.    Empire is informed and believes that on or about May 11, 2007,

9  Defendant JAMES A. NGUYEN plead guilty to assault with a semi-automatic

10  weapon and, as part of his plea, admitted that the shooting of April 29, 2006 was

11  carried out for the benefit of a street gang.  Empire is further informed and believes

12  that Defendant JAMES A. NGUYEN was sentenced to twelve (12) years in prison

13  for committing this crime, and that Defendant JAMES A. NGUYEN remains

14  incarcerated today.

15      12.    As a result of these events, RYAN and JAYCE BALDWIN filed a

16  lawsuit against Defendants JAMES A. NGUYEN, son of Defendants BINH HUU

17  NGUYEN and HOA DIANE NGUYEN, among others ("the Baldwin Action").  A

18  true and correct copy of the complaint setting forth the Baldwins' allegations is

19  attached as Exhibit "2."

20      13.    On November 18, 2007, Defendants BINH HUU NGUYEN and HOA

21  DIANE NGUYEN notified Empire of the existence of the Baldwin Action.  On or

22  about December 7th and 13th, 2007, Empire agreed to defend Defendants BINH

23  HUU NGUYEN and HOA DIANE NGUYEN under a reservation of its right to

24  disclaim coverage Empire is currently incurring attorneys' fees and costs to defend

25  Defendants in the Baldwin Action, while reserving all of its rights.

26  ///

27  ///

28  ///

# FIRST CAUSE OF ACTION

## Declaratory Relief

14.    Empire hereby incorporates paragraphs 1 through 13 by reference and re-alleges the allegations contained therein.

15.    Empire is informed and believes that there is an actual controversy because: 1) Empire is currently paying to defend Defendants in the Action, an obligation it contends that it does not owe to Defendants under the Policy; and 2) Defendants have accepted the defense, and Defendants and the Baldwins' claim that Empire is responsible to defend and/or indemnify Defendants.  Empire contends that it has no duty to defend or indemnify Defendants because of the intentional acts exclusion contained in Section II of the policy as is more clearly set forth above.

16.    Empire seeks to have the court declare the rights and duties of Empire, Defendants, and each of them, with respect to the insurance coverage dispute related to the allegations and causes of action alleged against the Nguyen Defendants by the Baldwin's.  Empire seeks a declaratory judgment in its favour, establishing that neither coverage nor any potential for coverage exists for Defendants under the Policy for claims, allegations, and causes of action with respect to the Baldwin Action.

## PRAYER

Wherefore, Empire prays for judgment against Defendants and each of them as follows:

1.    For judgment in favour of Empire declaring that:

    a.    the Policy provides no coverage to Defendants for the claims, allegations, or causes of action set forth in the Baldwin Action;

    b.    that Empire has no duty to either defend or indemnify James A. Nguyen, Binn Huu Nguyen, and/or Hoa Diane Nguyen under the Policy for any claim related to the Baldwin Action;

5

     c.     that Empire is entitled to reimbursement from James A. Nguyen, Binn Huu Nguyen, and/or Hoa Diane Nguyen for all defense fees and costs paid on its behalf in connection with its defense of these Defendants in the Baldwin Action; and

     d.     that Ryan and Jayce Baldwin are bound by the Declaratory Judgment that no coverage is afforded for the Baldwin Action, or any causes of action stated therein, under the Policy issued by Empire to Binn Huu Nguyen and Hoa Diane Nguyen.

2.     For costs of suit incurred herein;

3.     For attorneys' fees and costs incurred in the defense of the Baldwin Action for which coverage could not possibly exist under the Policy pursuant to *Buss v. Superior Court* (1997) 16 Cal.4th 35; and

4.     For such other and further relief as the court deems just and proper.

*Respectfully submitted,*

**PETTIT KOHN INGRASSIA & LUTZ PC**

Dated: January 10, 2007    By: _____

Andrew N. Kohn, Esq.
E-mail: akohn@pettitkohn.com
Attorneys for Plaintiff **EMPIRE FIRE & MARINE INSURANCE COMPANY**

2600-1102

PLAINTIFF EMPIRE FIRE & MARINE INSURANCE
COMPANY'S COMPLAINT FOR DECLARATORY RELIEF

**EXHIBIT 1**

Nguyen, Binh Huu and
Hoa Diane Nguyen
16750 Summit Vista Drive
San Diego, CA 92127

# Homeowners Policy

# Empire Fire and Marine Insurance Company

### A Stock Company

HO-POLJKT 0604

**Notice Concerning Victims of Domestic Violence**

**Insurers are prohibited from unfairly discriminating against any person based upon his or her status as a victim of domestic violence.**

# Empire Fire and Marine Insurance Company

### A Stock Company

Payment Center:
P.O. Box 673397
Marietta, GA 30006

**Renewal Policy**
**EFFECTIVE: 07/29/2005**

**HOMEOWNERS POLICY**
**DECLARATIONS**

**POLICY NUMBER**
ZHO541912-4

**EXPIRATION:** 07/29/2006 AT 12:01AM STANDARD TIME AT THE LOCATION OF THE RESIDENCE PREMISES/DWELLING

**NAMED INSURED AND PROPERTY ADDRESS**

Nguyen, Binh Huu and Hoa Diane Nguyen

16750 Summit Vista Drive, San Diego, CA  92127

**UNDERWRITING MANAGER**
**ZC STERLING INSURANCE AGENCY**
**MONTEREY, CALIFORNIA**

**MAIL TO:**

Nguyen, Binh Huu and
Hoa Diane Nguyen
16750 Summit Vista Drive
San Diego, CA 92127

**YOUR AGENT IS:**          RYLAN / N-A

Ryland Insurance Services
14635 N Kierland Boulevard
Suite 200
Scottsdale, AZ 85254
800-660-4539

INSURANCE IS TO BE PROVIDED ONLY WITH RESPECT TO THE LOCATION(S) AND/OR COVERAGE(S) FOR
WHICH A LIMIT OF LIABILITY IS SPECIFIED, SUBJECT TO ALL OF THE CONDITIONS OF THIS POLICY:

| SECTION I  COVERAGES | LIMIT | PREMIUM | SECTION II COVERAGES | LIMIT | PREMIUM |
|---|---|---|---|---|---|
| A - Dwelling | $ 414,000 | $ 802.00 | E - Personal Liability | $ 300,000 | $ 18.00 |
| B - Separate Structures | $ 41,400 | Included | F - Medical Payments : | | |
| C - Personal Property | $ 289,800 | Included | Each Person | $ 1,000 | Included |
| D - Loss of Use | $ 165,600 | Included | | | |
| (Section I Coverages A,B&C are subject to a $ 500 Deductible) | | | | | $ 120.00 |

**OTHER COVERAGES AND ENDORSEMENTS**

| Number | Edition | Title | LIMIT | PREMIUM |
|---|---|---|---|---|
| | | New Home Credit | | $ -192.00 |
| HO0003 | 1000 | Homeowners Policy Special Form | | Included |
| HO0104 | 0404 | Special Provisions | | Included |
| HO0416 | 1000 | Premises Alarm or Fire Protection | | $ -24.00 |
| HO0496 | 1000 | Day Care Exclusion Endorsement | | Included |
| HO2490 | 0801 | Workers Compensation - Residence Employees | | Included |
| HO9411 | 0103 | Platinum Homeowners Package Endorsement | | $ 396.00 |
| HO9486 | 0804 | Limitation Mold Other Fungi Wet/Dry Rot Damage | | Included |
| HO9501 | 0303 | Animal Liability Limitation | | Included |

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $ 1,120.00 |
| **POLICY FEE** | $ 0.00 |
| **TOTAL CHARGED FOR THIS TRANSACTION** | $ 1,120.00 |

**FIRST MORTGAGEE (6359166)**
Countrywide Home Loans, Inc.
Its Successors and/or Assigns
As Their Interests May Appear
Attn: Insurance Department
P.O. Box 961206, FTWX-22
Fort Worth, TX 76161

**SECOND MORTGAGEE**

Non-Impound

**ADDITIONAL MESSAGE(S):**
This Policy Includes Replacement Cost Coverage For Personal Property
This Policy DOES NOT Include Earthquake Coverage
This Policy Includes LIMITED Building Code Upgrade Coverage
50% additional coverage A available in case of total loss

**COUNTERSIGNED:** _____

HO-DEC(698 )  1/1/3/2002/2002/3798/1      ORIGINAL COPY

**DATE PRINTED:** 11/30/07

sandrak

# Empire Fire and Marine Insurance Company

## A Stock Company

Payment Center:
P.O. Box 673397
Marietta, GA 30006

| Renewal Policy | HOMEOWNERS POLICY | POLICY NUMBER |
|---|---|---|
| EFFECTIVE: 07/29/05 | DECLARATIONS | 2HO541912-4 |

**OTHER COVERAGES AND ENDORSEMENTS**

| Number | Edition | Title | LIMIT | PREMIUM |
|---|---|---|---|---|
| IL9003 | 0799 | Practices consumer complaint guarantee assoc info | | Included |

THIRD MORTGAGEE                                    FOURTH MORTGAGEE

# HOMEOWNERS 3 – SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

    a. Liability for "bodily injury" or "property damage" arising out of the:

        (1) Ownership of such vehicle or craft by an "insured";

        (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

        (3) Entrustment of such vehicle or craft by an "insured" to any person;

        (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

        (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

    b. For the purpose of this definition:

        (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

        (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

        (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

        (4) Motor vehicle means a "motor vehicle" as defined in 7. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

    a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

    b. Any other activity engaged in for money or other compensation, except the following:

        (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

        (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

        (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

        (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

    a. You and residents of your household who are:

        (1) Your relatives; or

        (2) Other persons under the age of 21 and in the care of any person named above;

    b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

        (1) 24 and your relative; or

        (2) 21 and in your care or the care of a person described in a.(1) above; or

c. Under Section II:

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or b. above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

(a) Persons while engaged in your employ or that of any person included in a. or b. above; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in a. and b. above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one family dwelling where you reside;

b. The two, three or four family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:
   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:
   a. Land, including land on which the other structures are located;
   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;
   c. Other structures from which any "business" is conducted; or
   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### C. Coverage C – Personal Property

1. Covered Property

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:
   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or
   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. Limit For Property At Other Residences

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:
   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or
   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. Special Limits Of Liability

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.
   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.
   b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware anc pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business' purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories j. and k. below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category j.

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category k.

4. **Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in E.10. Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage D is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in 1. Additional Living Expense and 2. Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, described in B.4. under Section I – Conditions.

### 3. Trees, Shrubs And Other Plants

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

### 4. Fire Department Service Charge

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

### 5. Property Removed

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

### 6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money

a. We will pay up to $500 for:

(1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

(2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

b. We do not cover:

(1) Use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household;

(b) By a person who has been entrusted with either type of card or access device; or

(c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2) Loss arising out of "business" use or dishonesty of an "insured".

c. If the coverage in a. above applies, the following defense provisions also apply:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under a.(1) or (2) above, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under a.(3) above.

    Copyright, Insurance Services Office, Inc., 1999    HO 00 03 10 00

## 7. Loss Assessment

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A, other than:

   (1) Earthquake; or

   (2) Land shock waves or tremors before, during or after a volcanic eruption.

   The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph P. Policy Period under Section I – Conditions does not apply to this coverage.

This coverage is additional insurance.

## 8. Collapse

a. With respect to this Additional Coverage:

   (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

   (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

   (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

   (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

   (1) The Perils Insured Against named under Coverage C;

   (2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

   (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

   (4) Weight of contents, equipment, animals or people;

   (5) Weight of rain which collects on a roof; or

   (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

## 9. Glass Or Safety Glazing Material

a. We cover:

   (1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

   (2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

   (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

 Copyright, Insurance Services Office, Inc., 1999

b. This coverage does not include loss:

  (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

  (2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in a.(2) above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage C, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

  (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

  (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

  (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

  (1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

  (2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage C.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures**

1. We insure against risk of direct physical loss to property described in Coverages A and B.

2. We do not insure, however, for loss:

a. Excluded under Section I – Exclusions;

b. Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; or

c. Caused by:

  (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

    (a) Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

  **(a)** Fence, pavement, patio or swimming pool;

  **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

  **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

  **(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

  **(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

  **(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

  **(a)** Wear and tear, marring, deterioration;

  **(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

  **(c)** Smog, rust or other corrosion, or dry rot;

  **(d)** Smoke from agricultural smudging or industrial operations;

  **(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

  **(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

  **(g)** Birds, vermin, rodents, or insects; or

  **(h)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above.

Under 2.b. and c. above, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

  **a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

  **b.** This peril does not include loss caused by theft:

    **(1)** Committed by an "insured";

    **(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

    **(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

    **(4)** That occurs off the "residence premises" of:

      **(a)** Trailers, semitrailers and campers;

      **(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

      **(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

## 12. Accidental Discharge Or Overflow Of Water Or Steam

**a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

**b.** This peril does not include loss:

   **(1)** To the system or appliance from which the water or steam escaped;

   **(2)** Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;

   **(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

   **(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**d.** Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

## 13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

## 14. Freezing

**a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

   **(1)** Maintain heat in the building; or

   **(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   **b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

## 15. Sudden And Accidental Damage From Artificially Generated Electrical Current

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

## 16. Volcanic Eruption

This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

### 1. Ordinance Or Law

Ordinance Or Law means any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion A.1.a. does not apply to the amount of coverage that may be provided for in E.11. Ordinance Or Law under Section I – Property Coverages;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion A.1. applies whether or not the property has been physically damaged.

### 2. Earth Movement

Earth Movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion A.2. does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion A.7. pertains to Nuclear Hazard to the extent set forth in M. Nuclear Hazard Clause under Section I – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

## SECTION I - CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage unless there is full compliance with the following duties. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

d. Changes in title or occupancy of the property during the term of the policy;

e. Specifications of damaged buildings and detailed repair estimates;

f. The inventory of damaged personal property described in 6. above;

g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition C., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

  **(1)** The actual cash value of that part of the building damaged; or

  **(2)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

  **(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

  **(2)** Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

  **(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

However, if the cost to repair or replace the damage is both:

  **(1)** Less than 5% of the amount of insurance in this policy on the building; and

  **(2)** Less than $2,500;

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

## H. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

## I. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

## J. Abandonment Of Property

We need not accept any property abandoned by an "insured".

## K. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs E. Appraisal, G. Suit Against Us and I. Loss Payment under Section I – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

## L. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

## M. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

## N. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

## O. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

## P. Policy Period

This policy applies only to loss which occurs during the policy period.

## Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

**A. "Motor Vehicle Liability"**

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B. 6.a., b., d., e. or h.; or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

## B. "Watercraft Liability"

1. Coverages E and F do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

   c. Used to carry persons or cargo for a charge; or

   d. Used for any "business" purpose.

2. If Exclusion B.1. does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power, that is:

      (1) Less than 26 feet in overall length; or

      (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

   c. Is not a sailing vessel and is powered by:

      (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

         (a) 50 horsepower or less and not owned by an "insured"; or

         (b) More than 50 horsepower and not owned by or rented to an "insured"; or

      (2) One or more outboard engines or motors with:

         (a) 25 total horsepower or less;

         (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

         (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

      (d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

         (i) You declare them at policy inception; or

         (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

   The coverages in (c) and (d) above apply for the policy period.

   Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

## C. "Aircraft Liability"

This policy does not cover "aircraft liability".

## D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

## E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others

Coverages E and F do not apply to the following:

1. Expected Or Intended Injury

   "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this Exclusion E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. "Business"

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion E.2. does not apply to:

      (1) The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

### 3. Professional Services

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

### 4. "Insured's" Premises Not An "Insured Location"

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

### 5. War

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

### 6. Communicable Disease

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

### 7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

### 8. Controlled Substance

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions A. "Motor Vehicle Liability", B. "Watercraft Liability", C. "Aircraft Liability", D. "Hovercraft Liability" and E.4. "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

### F. Coverage E – Personal Liability

Coverage E does not apply to:

1. Liability:

    a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in D. Loss Assessment under Section II – Additional Coverages;

    b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

        (1) That directly relate to the ownership, maintenance or use of an "insured location"; or

        (2) Where the liability of others is assumed by you prior to an "occurrence";

        unless excluded in a. above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

    a. Workers' compensation law;

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

  a. Is also an insured under a nuclear energy liability policy issued by the:

    (1) Nuclear Energy Liability Insurance Association;

    (2) Mutual Atomic Energy Liability Underwriters;

    (3) Nuclear Insurance Association of Canada;

    or any of their successors; or

  b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definitions 5.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured":

  a. To repay; or

  b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

## G. Coverage F – Medical Payments To Others

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

  a. Occurs off the "insured location"; and

  b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

  a. Workers' compensation law;

  b. Non-occupational disability law; or

  c. Occupational disease law;

3. From any:

  a. Nuclear reaction;

  b. Nuclear radiation; or

  c. Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

  d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

  a. To the extent of any amount recoverable under Section I;

  b. Caused intentionally by an "insured" who is 13 years of age or older;

  c. To property owned by an "insured";

  d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

  e. Arising out of:

    (1) A "business" engaged in by an "insured";

    (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

    (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This exclusion e.(3) does not apply to a "motor vehicle" that:

(a) Is designed for recreational use off public roads;

(b) Is not owned by an "insured"; and

(c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

c. With the conduct of suits and attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to C. Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

## D. Duties Of An Injured Person – Coverage F – Medical Payments To Others

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

## E. Payment Of Claim – Coverage F – Medical Payments To Others

Payment under this coverage is not an admission of liability by an "insured" or us.

## F. Suit Against Us

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

## G. Bankruptcy Of An "Insured"

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

## H. Other Insurance

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## I. Policy Period

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

## J. Concealment Or Fraud

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

# SECTIONS I AND II – CONDITIONS

## A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

## B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

## C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

HO 00 03 10 00           Copyright, Insurance Services Office, Inc., 1999      

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

  **(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

  **(2)** If the risk has changed substantially since the policy was issued.

  This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

## D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

## E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

## F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph C. Damage To Property Of Others under Section II – Additional Coverages.

## G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

  **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

  **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1999

HO 00 03 10 00

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – CALIFORNIA

### SECTION I – EXCLUSIONS

**8. Intentional Loss**

The following paragraph is added:

This exclusion does not apply, with respect to loss to covered property caused by fire, to an "insured" who does not commit or conspire to commit, any act that results in loss by fire. We cover such "insured" only to the extent of that "insured's" legal interest, but not exceeding the applicable limit of liability.

We may apply reasonable standards of proof to claims for such loss.

(This is Exclusion **A.8.** in Forms HO 00 03 and HO 00 05.)

### SECTION I – CONDITIONS

**E. Appraisal is replaced by the following:**

**E. Appraisal**

If you and we fail to agree on the amount of loss, then, either party may make a written request for an appraisal. In this event, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the two appraisers will select a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will appraise the loss, stating separately the loss to each item. If they fail to agree, they will submit their differences to the umpire. An award in writing, agreed to by any two, will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**G. Suit Against Us is replaced by the following:**

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within one year after the date of loss.

**I. Loss Payment is replaced by the following:**

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

**a.** Reach an agreement with you;

**b.** There is an entry of a final judgment; or

**c.** There is a filing of an appraisal award with us.

**Q. Concealment Or Fraud is replaced by the following:**

**Q. Concealment Or Fraud**

**1.** With respect to loss caused by fire, we do not provide coverage to the "insured" who has:

   **a.** Intentionally concealed or misrepresented any material fact or circumstance;

   **b.** Engaged in fraudulent conduct;

   **c.** Made false statements;

relating to this insurance.

**2.** With respect to loss caused by a peril other than fire, we provide coverage to no "insureds" under this policy, if whether before or after a loss, an "insured" has:

   **a.** Intentionally concealed or misrepresented any material fact or circumstance;

   **b.** Engaged in fraudulent conduct;

   **c.** Made false statements;

relating to this insurance.

(This is Condition P. in Forms HO 00 04.)

**SECTIONS I AND II – CONDITIONS**

**C. Cancellation**

Paragraphs **2.b., 2.c., 2.d.,** and **4.** are replaced by the following:

b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason, except as provided below, by letting you know at least 20 days before the date cancellation takes effect.

We may not cancel this policy solely because:

(1) You accepted an offer of earthquake coverage;

(2) Corrosive soil conditions exist on the "residence premises". This Provision **(2)** applies only if this policy includes one or more of the following, which exclude loss caused by corrosive soil conditions:

(a) Homeowners 3 – Special Form;

(b) Homeowners 5 – Comprehensive Form;

(c) Special Personal Property Coverage Endorsement;

(d) Unit-Owners Coverage A Endorsement; or

(e) Unit-Owners Coverage C Endorsement; or

(3) You canceled or did not renew an earthquake policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we may cancel this policy if you have accepted a new or renewal policy issued by the CEA that included an earthquake policy premium surcharge, but you failed to pay the earthquake policy premium surcharge authorized by the CEA.

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been:

(1) Conviction of a crime having as one of its necessary elements an act increasing the hazard insured against; or

(2) Discovery of fraud or material misrepresentation; by:

(a) Any "insured" or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy; or

(3) Discovery of grossly negligent acts or omissions substantially increasing any of the hazards insured against; or

(4) Physical changes in the property insured against which result in the property becoming uninsurable.

However, we may not cancel this policy solely because corrosive soil conditions exist on the "residence premises" if this policy includes one or more of the following, which exclude loss caused by corrosive soil conditions:

(a) Homeowners 3 – Special Form;

(b) Homeowners 5 – Comprehensive Form;

(c) Special Personal Property Coverage Endorsement;

(d) Unit-Owners Coverage A Endorsement; or

(e) Unit-Owners Coverage C Endorsement; or

(5) Acceptance of a new or renewal policy, issued by the CEA that included an earthquake policy premium surcharge, but you failed to pay the earthquake policy premium surcharge authorized by the CEA.

This can be done by notifying you at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 45 days before the date cancellation takes effect.

4. If, when we cancel this policy, the return premium is not refunded with the notice of cancellation, we will refund it within 25 days after the date cancellation takes effect. If, when you cancel this policy, the return premium is not refunded when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal** is replaced by the following:

**D. Nonrenewal**

1. We may elect not to renew this policy, subject to the provisions of 2. below. We may do so by delivering to you at your mailing address shown in the Declarations, written notice at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

2. We will not refuse to renew this policy:

   a. Solely because you accepted an offer of earthquake coverage.

   However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew this policy after you have accepted an offer of earthquake coverage if one or more of the following reasons apply:

   (1) The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

   (2) The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

   (3) We have:

   (a) Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

   (b) Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   b. Solely because you cancelled or did not renew an earthquake policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge;

   c. Solely because corrosive soil conditions exist on the "residence premises". This Provision c. applies only if this policy includes one or more of the following, which exclude loss caused by corrosive soil conditions:

   (1) Homeowners 3 – Special Form;

   (2) Homeowners 5 – Comprehensive Form;

   (3) Special Personal Property Coverage Endorsement;

   (4) Unit-Owners Coverage A Endorsement; or

   (5) Unit-Owners Coverage C Endorsement; or

   d. Solely on the grounds that a claim is pending under the policy unless such claim is made under coverage for loss caused by an earthquake; or

   e. Solely on the basis of an "insured's" age.

3. If this policy is written for a period of less than one year, we agree not to refuse to renew except at the end of an annual period commencing with the original or renewal effective date.

All other provisions of this policy apply.

HO 01 04 04 04          © ISO Properties, Inc., 2003          Page 3 of 3

HOMEOWNERS
HO 04 16 10 00

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system
and/or automatic sprinkler system approved by us on
the "residence premises". You agree to maintain this
system or systems, for which we have granted a
credit, in working order and to let us know promptly of
any change, including removal, made to the sys-
tem(s).

HOMEOWNERS
HO 04 96 10 00

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

# NO SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# LIMITED SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

  **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

  **2.** Any other activity engaged in for money or other compensation, except the following:

    **a.** One or more activities:

      **(1)** Not described in b. through d. below; and

      **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

    **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

  **1.** That an "insured" engages in for money or other compensation; and

  **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

  the home day care service and other activity will be considered a "business".

**D.** With respect to C. above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  **1.** Described in A.2. above, and

  **2.** Engaged in for money by a single "insured";

  may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to A. through D. above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  **1.** Does not provide:

    **a.** Section II coverages. This is because a "business" of an "insured" is excluded under E.2. of Section II – Exclusions;

    **b.** Coverage, under Section I, for other structures from which any "business" is conducted; and

  **2.** Limits Section I coverage, under Coverage C – Special Limits of Liability, for "business" property:

    **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category h. (e. in Form HO 00 08) imposes that limit on "business" property on the "residence premises";

    **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category i. (f. in Form HO 00 08) imposes that limit on "business" property away from the "residence premises". Category i. does not apply to property described in Categories j. and k. (g. and h. respectively in Form HO 00 08).

POLICY NUMBER:

HOMEOWNERS
HO 24 90 08 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WORKERS COMPENSATION
# RESIDENCE EMPLOYEES – CALIFORNIA

**A. Agreement**

We agree, with respect to "residence employees":

**UNDER COVERAGE I**

To pay when due all benefits required of an "insured" by the California Workers' Compensation Law; and

**UNDER COVERAGE II**

To pay on behalf of an "insured" all damages for which the "insured" is legally liable because of "bodily injury" sustained by a "residence employee". The "bodily injury" must be caused by accident or disease and arise out of and in the course of employment by the "insured" while:

1. In the United States of America, its territories or possessions, or Canada, or

2. Temporarily elsewhere if the "residence employee" is a citizen or resident of the United States or Canada.

Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

**B. Who is Covered**

A "residence employee" is covered if during the 90 calendar days immediately before the date of injury the employee has:

a. Actually been engaged in such employment by the "insured" for no less than 52 hours, and

b. Earned no less than one hundred dollars ($100) in wages.

**C. Application Of Coverage**

This insurance applies only to "bodily injury" which occurs during the policy period. If the "bodily injury" is a disease, it must be caused or aggravated by the conditions of the "residence employee's" employment by the "insured".

**D. Policy Provisions**

This insurance is subject to all the provisions of this endorsement and the following provisions of this policy:

1. Under Sections I and II – Conditions:

   B. Waiver Or Change Of Policy Provisions

   C. Cancellation

   E. Assignment

   F. Subrogation

2. Under Section II – Conditions:

   C. Duties After "Occurrence"

   F. Suit Against Us

3. Under Section II – Liability Coverages, our agreement to defend an "insured" as provided under A. Coverage E – Personal Liability.

4. Under Section II – Additional Coverages:

   A. Claim Expenses.

   B. First Aid Expenses.

5. The definitions of "bodily injury", "business", "insured" and "residence employee".

**E. Additional Provisions Applicable To Coverage I**

The following provisions are applicable to Coverage I:

1. We shall be directly and primarily liable to any "residence employee" of an "insured" entitled to the benefits of the California Workers' Compensation Law.

2. As between the "residence employee" and us, notice to or knowledge of the "occurrence" of the injury on the part of an "insured" will be deemed notice or knowledge on our part.

3. The jurisdiction of an "insured" will, for the purpose of the law imposing liability for compensation, be our jurisdiction.

Copyright, Insurance Services Office, Inc., 2001

4. We will be subject to the orders, findings, decisions or awards rendered against an "insured", under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of this policy. This policy shall govern as between an "insured" and us as to payments by either in discharge or an "insured's" liability for compensation.

5. The "residence employee" has a first lien upon any amount which we owe you on account of this insurance. In case of your legal incapacity or inability to receive the money and pay it to the "residence employee", we will pay it directly to the "residence employee". Your obligation to the "residence employee" will be discharged to the extent of such payment.

**F. Limits Of Liability Coverage II**

Our total limit of liability will not exceed $100,000 for all damages because of "bodily injury":

1. Sustained by one or more "residence employees" in any one accident; or

2. Caused by disease and sustained by a "residence employee".

Our total limit of liability will not exceed $500,000 for all damages arising out of "bodily injury" by disease regardless of the number of "residence employees" who sustain "bodily injury" by disease.

**G. Other Insurance**

This insurance does not apply to any loss to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

**H. Conformity To Statute**

Terms of this insurance which are in conflict with the California Workers' Compensation Law are amended to conform to that law.

**I. Exclusions**

This policy does not apply:

1. To liability for additional compensation imposed on an "insured" under Sections 4553 and 4557, Division IV, Labor Code of the State of California, because of the serious and willful misconduct of an "insured", or because of "bodily injury" to an employee under 16 years of age and illegally employed at the time of injury;

2. To liability for "bodily injury" arising out of "business" pursuits of an "insured".

3. Under Coverage II:

   a. To liability assumed by the "insured" under any contract or agreement.

   b. To "bodily injury" by disease unless a written claim is made or suit brought against the "insured" within 36 months after the end of the policy period.

   c. To any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

        Copyright, Insurance Services Office, Inc., 2001        **HO 24 90 08 01**

HOMEOWNERS

HO 9411 0103

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PLATINUM HOMEOWNERS PACKAGE ENDORSEMENT

# COVERAGE A – DWELLING

**(APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE
COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS)**

### SCHEDULE*

> Additional Amount Of Insurance:
>
> **50  %**
>
> The Additional Amount Of Insurance is determined by multiplying the Coverage A limit of liability shown in the
> Declarations by the percentage amount shown above.
>
> \*    Entry may be left blank if shown elsewhere in this policy for this coverage.

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance
with the following provisions:

A. If you have:

   1. Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

      a.  The property evaluations we make; and

      b.  Any increases in inflation; and

   2. Notified us, within 30 days of completion, of any improvements, alterations or additions to the building
      insured under Coverage A which increase the replacement cost of the building by 5% or more;

   The provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged
   building.

B. If there is a loss to the building insured under Coverage A that exceeds the Coverage A limit of liability shown
   in the Declarations, for the purpose of settling that loss only:

   1. We will provide an additional amount of insurance, up to the amount described in the Schedule above; and

   2. Section I – Condition C, Loss Settlement Paragraph 2. is deleted and replaced by Paragraphs 2., 3., and 4,
      as follows:

      2. The building insured under Coverage A at replacement cost without deduction for depreciation. We will
         pay no more than the smallest of the following amounts:

         a. The replacement cost of that part of the building damaged with material of like kind and quality and
            for like use;

         b The necessary amount actually spent to repair or replace the damaged building; or

         c. The limit of liability under this policy that applies to the building, plus any additional amount provided
            by this endorsement.

If the building is rebuilt at a new premises, the cost described in a. above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

3. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

4. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to the building on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis, provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

# COVERAGE C - PERSONAL PROPERTY

## PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

A. **Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:
   a. Coverage C; and
   b. If covered in this policy:
      (1) Awnings, outdoor antennas and outdoor equipment; and
      (2) Carpeting and household appliances;
      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:
   a. Jewelry;
   b. Furs and garments:
      (1) Trimmed with fur; or
      (2) Consisting principally of fur;
   c. Cameras, projection machines, films and related articles of equipment;
   d. Musical equipment and related articles of equipment;
   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:
      (1) Pens or pencils;
      (2) Flasks;
      (3) Smoking implements; or
      (4) Jewelry; and
   f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

B. **Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.
2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.
3. Articles not maintained in good or workable condition.
4. Articles that are outdated or obsolete and are stored or not being used.



## C. Replacement Cost Loss Settlement Condition

The following loss settlement condition applies to all property described in A. above:

1. We will pay no more than the least of the following amounts:
   a. Replacement cost at the time of loss without deduction for depreciation;
   b. The full cost of repair at the time of loss;
   c. The limit of liability that applies to Coverage C, if applicable;
   d. Any applicable special limits of liability stated in this policy; or
   e. For loss to any item described in A.2.a. - f. above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in A. above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

# COVERAGE C - PERSONAL PROPERTY LIMIT

The Coverage C limit of liability is increased to 70% of the Coverage A limit of liability as shown on the declaration page.

All other provisions of this policy apply.

# COVERAGE C INCREASED SPECIAL LIMITS OF LIABILITY

| Property | Total Limit of Liability |
|---|---|
| e. Jewelry, watches, furs, precious and semi-precious stones for loss by theft; but not exceeding $1,000 for any one article. | $ 2,000 |
| g. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware for loss by theft. | $ 3,000 |

# COVERAGE D - LOSS OF USE

## COVERAGE D - LOSS OF USE LIMIT

The Coverage D limit of liability is increased to 40% of the Coverage A limit of liability as shown on the declaration page.

# MORTGAGE PROTECTION ENDORSEMENT

## INSURING AGREEMENT

We will pay up to $1,500 per month commencing with the fourth month following a covered loss, not to exceed twelve consecutive months thereafter ($18,000 maximum benefit), only when ALL of the following criteria are met:

(1) The home remains uninhabitable after 90 days; and

(2) The home was damaged by a PERIL INSURED AGAINST; and

(3) The payment to be made is equal to the principal and interest of the monthly payment due from the insured for a promissory note on the covered dwelling, executed by the insured and secured by a first deed of trust or mortgage, not including:

a.  Taxes of any type;

b.  Insurance premiums;

c.  Delinquency on the insured's promissory note;

d.  Trustee funds; or

e.  Late penalties.

# TERMINATION

This endorsement will terminate without notice 120 calendar days after a covered loss renders the dwelling uninhabitable when:

(1) no construction or repairs operations have been started on the covered dwelling; or

(2) the insured moves to another residence as a permanent home.

All other provisions of this policy apply.

# REFRIGERATED PROPERTY COVERAGE

**A. Definitions**

The following definition is added:

"Loss of power" means the complete or partial interruption of electric power due to conditions beyond an "insured's" control.

**B. Coverage**

1.  We insure, for up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

    a.  "Loss of power" to the refrigeration unit. "Loss of power" must be caused by damage to:

    (1) Generating equipment; or

    (2) Transmitting equipment; or

    b.  Mechanical failure of the unit which stores the property.

2.  Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

3.  This endorsement does not increase the limit of liability for Coverage C.

**C. Special Deductible**

The following will replace any other deductible provision in this policy with respect to loss covered under this endorsement:

We will pay only that part of the total of all loss payable that exceeds $100. No other deductible applies to this coverage.

**D. Exception To Power Failure Exclusion**

The Power Failure exclusion does not apply to this coverage.

All other provisions of this policy apply.

# LOCK REPLACEMENT ENDORSEMENT

We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the residence premises, when the keys to those locks are a part of a covered theft loss.

No deductible applies to Lock Replacement Coverage.

**HO 9411 0103**        Includes copyrighted material of Insurance Services Office, Inc, with its permission. Copyright, Insurance Services Office, Inc. 2002        **Page 4 of 4**

HO9486 0804

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION FOR MOLD AND OTHER FUNGI, AND WET OR DRY ROT, DAMAGE

## SECTION I – PERILS INSURED AGAINST

### A.  Coverage A – Dwelling And Coverage B – Other Structures

Under Items 2., c., (5) and 2., c., (5)(a)(b), the following provisions are deleted in their entirety:

    (5)    Mold, fungus or wet rot.  However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

        (a)  a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

        (b)  a storm drain, or water, steam or sewer pipes, off the "residence premises".

    For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

and are replaced by the following:

    (5)  Mold or other fungi, or wet or dry rot.  This policy specifically excludes coverage for losses caused by or resulting from mold or other fungi, or wet or dry rot, which results directly or indirectly from an excluded peril.  This policy also specifically excludes coverage for losses caused by or resulting from wet or dry rot which results directly or indirectly from a covered peril.  This policy specifically limits coverage for losses caused by or resulting from mold or other fungi which results directly or indirectly from a covered peril, in that coverage for such losses is limited to the greater of either a) up to ten percent (10%) of the limit of liability that applies to Coverage A, or b) ten thousand ($10,000) dollars; This limit applies per occurrence.

    or

Under Item 2., c., (6)(c), the following provision is deleted in its entirety:

    (6)(c)  Smog, rust or other corrosion, or dry rot;

and is replaced by the following:

    (6)(c)  Smog, rust or other corrosion;

Under Item 2., c., the following provision is deleted in its entirety:

    "Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and (6) above."

and is replaced by the following:

    "Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(6) above."

All other provisions of this policy apply.

HO9486 0804

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.    HO 95 01 03 03

# ANIMAL LIABILITY LIMITATION

## SECTION II - LIABILITY COVERAGES

In consideration of premium charged, Section II - Liability Coverages, COVERAGE E - Personal Liability 1. is deleted and replaced by:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Pay up to our limit of liability for the damages for which the "insured" is legally liable, except that $25,000 is the most we will pay for claims arising out of a dog you own or have in your custody, care or control, which:

    a.  Is a pure or partial breed of German Shepherd, Doberman Pinscher, Pit Bull, Rottweiler, Chow, Wolf, or Wolf Hybrid

    b.  Is any breed of dog trained or used as an attack or guard dog; or

    c.  Is any breed of dog that has a prior history of biting.

    d.  Is a farm animal or an exotic pet.

All other provisions of this policy apply.

HO 9501 0303

Page 1 of 1

The following notices apply to your policy:

IL 90 03 0799

## NOTIFICATION OF INFORMATION PRACTICES
### (As required by Article 6.6 of the Insurance Code)

To help protect your right to privacy we would like you to be aware of the following information:

When providing homeowners or dwelling fire coverage, in addition to the information that we receive from our agent, we sometimes obtain a property inspection report or a consumer report. The inspection report will typically include a diagram of your property and a color photograph which we use as an indicator of the overall exterior maintenance of the property. There are check-off questions regarding age of dwelling, roof construction, and general maintenance of the property. The organization completing the report does not ask any questions of neighbors. Their information is gathered from observation of the premises.

You don't need to be home for the completion of the inspection. If a neighbor asks, the inspector will identify himself/herself and briefly explain his/her purpose, or he/she may leave a card at the residence advising the owner he/she has inspected the property.

You have a right to obtain a copy of the report or to be interviewed in connection with it. Upon written request, we will provide you with the name and address of the reporting company, if you desire to review the report. You have the right to discuss any inaccuracies and have them corrected.

Occasionally an insurance company may contact the company which last provided coverage and ask some routine questions about the exterior maintenance of the home and verify any losses incurred during the previous policy term. The Privacy Protection Act requires that you know this information may be disclosed to another company if a request is made in writing.

In the event of an adverse underwriting decision, you are entitled, upon written request, to know the specific items of information concerning your property that support the Company's decision and the sources of the information. Your written request must be received by us within 90 business days of the date of the notice. We will respond within 21 business days of the receipt of your request.

## CONSUMER COMPLAINTS

IF YOU HAVE A COMPLAINT REGARDING YOUR POLICY, YOU SHOULD CONTACT YOUR AGENT OR THE COMPANY FIRST. IF THIS FAILS TO PRODUCE A SATISFACTORY SOLUTION TO THE PROBLEM, YOU CAN CONTACT THE DEPARTMENT OF INSURANCE, CONSUMER AFFAIRS 7 DIVISION. 300 S. SPRING STREET, LOS ANGELES, CA 90013 OR CALL TOLL FREE 1-800-927-HELP.

## CALIFORNIA INSURANCE GUARANTEE ASSOCIATION

Companies writing property and casualty insurance business in California are required to participate in the California Insurance Guarantee Association. If a company becomes insolvent the California Insurance Guarantee Association settles unpaid claims and

assesses each insurance company for its fair share. California law requires all companies to surcharge policies to recover these assessments. If your policy is surcharged, "CIGA Recoupment Surcharge" with an amount will be displayed on your premium notice.

IL 90 03 0799

This policy signed at Omaha, Nebraska on behalf of Empire Fire and Marine Insurance Company by our President and Secretary. It is countersigned on the declarations page by our authorized representative in those jurisdictions where counter signature is required.

Steve Rand
President

John Kinsler
Secretary

# Empire Fire and Marine Insurance Company

## A Stock Company

HO-POLJKT 0604

To report a new claim, or to inquire about an existing claim, please call 1.800.822.2997, or use the website of our program manager at www.zcsterling.com. When using the website, go to the "Claims Services" page, and use the available link to reach the "Contact Us" page.

For reference your policy number is:
ZHO541912-4

For all inquiries, coverage information and compliant assistance, please contact your agent or call:

Ryland Insurance Services
14835 N Klerland Boulevard
Suite 200
Scottsdale, AZ 85254
Tel: 800-660-4539



A member of the ⓩ *Zurich Financial Services Group*

Empire Fire and Marine Insurance Company
13810 FNB Parkway
Omaha, NB 68154-5202

HO-POLJKT 0604

ATTN: Sandra case # -----

## SUMMONS
### (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Christopher A. Bui, an individual; James A. Nguyen, an individual; David Van Tran, an individual; Kevin Han Chung, an individual; Robert Pham, an individual; Xuen Phong Vu, an individual; Tammy Nga, an individual; Tam The Huynh, an individual; James Bui, an individual; Mai Vu, an individual; Binh Hifu Nguyen, an individual; Dinac Hoa, an individual; Hai Hoang Lieu, an individual; Huynh Muoi, an individual; Reeda L. Layon, an individual; Mary A. Pham, an individual; Thach Kim Nguyen, an individual; and DOES 1 through 200, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
Ryan Baldwin, an individual, and Jayce Baldwin, an individual

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/español), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/español) o poniéndose en contacto con la corte o el colegio de abogados locales.*

CASE NUMBER:
*(Número del Caso):*
37-2007-00081572-CU-PO-CTL

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Diego Superior Court
330 W. Broadway
330 W. Broadway
San Diego, CA 92101
Hall of Justice

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John H. Gomez (171485)    (619) 237-3490    (619) 237-3496
Maria F. Palmieri (234560)
THE GOMEZ LAW FIRM
San Diego, CA 92101

DATE: November 13, 2007     Clerk, by _____, Deputy
*(Fecha)*     *(Secretario)*     *(Adjunto)*

T. CURRY

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)      ☒ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 11/16/07

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

SUMMONS

Code of Civil Procedure §§ 412.20, 465

Legal Solutions Plus

Sandra Case # 0753942

1 | John H. Gomez (171485)
Maria F. Palmieri (234560)
2 | The Gomez Law Firm
625 Broadway, Suite 600
3 | San Diego, California 92101
Telephone: (619) 237-3490/Fax: (619) 237-3496
4 |
5 | Attorneys for Plaintiffs Ryan and Jayce Baldwin
6 |
7 |
8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9 | IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| 10  RYAN BALDWIN, an individual; and JAYCE BALDWIN, an individual; | Case No.    37-2007-00081572-CU-PO-CTL |
| 11 | (Unlimited Civil) |
| 12             Plaintiff, | COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL. |
| 13  vs. | |
| 14  CHRISTOPHER A. BUI, an individual; JAMES A. NGUYEN, an individual; DAVID | 1. Battery; |
| 15  VAN TRAN, an individual; KEVIN HUA CHANG, an individual; ROBERT PHAM, an | 2. Assault; 3. Conspiracy; 4. Negligence; |
| 16  individual; XUAN PHONG VU, an individual; TOMMY NGO, an individual; | 5. Negligent Supervision & Control; 6. Negligent Entrustment of Motor Vehicle; |
| 17  TAM THE HUYNH, an individual; JAMES BUI, an individual; MAI VU, an individual; | 7. Cal. Vehicle Code §17150; 8. Cal. Vehicle Code §17708; |
| 18  BINH HUU NGUYEN, an individual; DIANE HOA, an individual; HAI HOANG | 9. Cal. Civil Code §1714.1; 10. Negligent Infliction of Emotional |
| 19  LIBU, an individual; HUYNE MUOI, an individual; RECELA L. LAYON, an | Distress; 11. Negligent Infliction of Emotional |
| 20  individual; MARY A. PHAM, an individual; THANH KIM NGUYEN an individual; and | Distress- Bystander; 12. Intentional Infliction of Emotional Distress. |
| 21  DOES 1 through 200, inclusive, | |
| 22 | |
| 23             Defendants. | |

24 | Plaintiffs RYAN BALDWIN and JAYCE BALDWIN allege as follows:

25 |                                      PARTIES AND VENUE

26 |       1.  Plaintiffs RYAN BALDWIN and JAYCE BALDWIN, are and at all times mentioned

27 | herein, were residents of the County of San Diego.

28 | ///

-1-

COMPLAINT FOR DAMAGES

11/29/2007 17:37 FAX 7703032    ZC STERLING    ☑006/070
p.4

Nov 29 07 10:05a

*Sandra    case # 0753942*

2. Defendants CHRISTOPHER A. BUI, JAMES A. NGUYEN, DAVID VAN TRAN, KEVIN HUA CHANG, ROBERT PHAM, XUAN PHONG VU, TOMMY NGO, and TAM THE HUYNH, an individual, (hereinafter known as "Gang Defendants") are and at all times mentioned herein, were residents of the County of San Diego.

3. Defendants JAMES BUI, MAI VU, BINH HUU NGUYEN, DIANE HOA, HAI HOANG LIEU, HUYNH MUOI, RECELA L. LAYON, MARY A. PHAM, and THANH KIM NGUYEN, an individual, (hereinafter known as "Parent Defendants") are and at all times mentioned herein, were residents of the County of San Diego.

4. The true names and capacities of the Defendants named herein as DOES 1 through 100, inclusive, are individual parents, caretakers, guardians, or otherwise persons having custody and control of the Gang Defendants, and are unknown to Plaintiffs who therefore sue such Defendants by fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

5. The true names and capacities of the Defendants named herein as DOES 101 through 200, inclusive, whether individual, corporate, governmental, associate or otherwise, are unknown to Plaintiffs who therefore sue such Defendants by fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

6. Plaintiffs are informed and believe, and thereon allege, that each of the Doe Defendants is responsible in some manner, either by act or omission, strict liability, fraud, negligence or otherwise, for the occurrences herein alleged, and that Plaintiffs' harm was legally caused by conduct of the Doe Defendants.

7. Plaintiffs are informed and believe, and thereon allege that DOES 1 through 200, inclusive, are responsible to Plaintiffs on the facts and theories herein alleged.

8. Plaintiffs are informed and believe that at all relevant times, each Defendant, including those fictitiously named, were the agent, servant, and/or employee of each of the remaining Defendants, and were acting within the course and scope of said agency and employment.

9. Plaintiffs are informed and believed that each of the Defendants are in some manner responsible for the events and happenings to which reference is made herein, and that each Defendant

-2-

COMPLAINT FOR DAMAGES

*Sandra case # 0753942*

1   caused injury and damage to Plaintiffs as herein alleged.

2       10. The acts of Defendants and each of them were and are the acts of the other Defendants.

3   Defendants, and each of them, ratified, authorized, and/or approved of the acts of the other Defendants.

4       11. Venue is proper in this district because the acts alleged took place here.

5                              FACTUAL ALLEGATIONS

6       12. Defendants JAMES N. BUI, MAI VU and DOES 1-100 are and at all times mentioned

7   herein, were the parents, caretakers, guardians, or otherwise persons having supervision, custody and

8   control of Defendant CHRISTOPHER A. BUI.

9       13. Defendants BINH HAU NGUYEN, DIANE HOA and DOES 1-100 are and at all times

10  mentioned herein, were residents the parents, caretakers, guardians, or otherwise persons having

11  custody and control of Defendant JAMES AN NGUYEN, a minor.

12      14. Defendants HAI HOANG LIBU, HUYNH MUOI, and DOES 1-100 are and at all times

13  mentioned herein, were the parents, caretakers, guardians, or otherwise persons having custody and

14  control of Defendant DAVID VAN TRAN, a minor.

15      15. Defendant RECBLA L. LAYON and DOES 1-100 are and at all times mentioned herein

16  were the parents, caretakers, guardians, or otherwise persons having custody and control of Defendant

17  KEVIN HUA CHANG, a minor.

18      16. Defendants MARY A. PHAM, and DOES 1-100 are and at all times mentioned herein

19  were the parents, caretakers, guardians, or otherwise persons having custody and control of Defendant

20  ROBERT PHAM, a minor.

21      17. Defendants THANH KIM NGUYEN and DOES 1-100 are and at all times mentioned

22  herein were the parents, caretakers, guardians, or otherwise persons having custody and control of

23  Defendant XUAN PHONG VU, a minor.

24      18. At all times herein mentioned, Defendants DOES 1-100 are the parents, caretakers,

25  guardians, or otherwise persons having custody and control of Defendant TOMMY NGO, a minor.

26      19. Defendants DOES 1-100 are and at all times mentioned herein, were the parents,

27  caretakers, guardians, or otherwise persons having custody and control of Defendant TAM THE

28  HUYNH, a minor.

-3-

COMPLAINT FOR DAMAGES

Sandva Case # 0753942

20. Gang Defendants and DOES 101-200 were at all times herein mentioned enrolled in high school and lived in the same residence of their Parent Defendants and DOES 1-200.

21. With the exception of Defendant CHRISTOPHER A. BUI, Gang Defendants and DOES 101-200 were at all times herein mentioned minors with ages ranging from 15 to 17 years old.

22. Gang Defendants and DOES 101-200 are and at all times mentioned herein, were members of the street gang known as Asian Crips. Members of Asian Crips, including Gang Defendants and DOES 101-200, are known for terrorizing and preying upon San Diego with violent crimes, occasionally resulting in murders. Members of Asian Crips, including Gang Defendants and DOES 101-200, emulate other ethnic gangs by adopting characteristics such as gang names, colors, hand signs, tattoos, and graffiti. Violence by members of Asian Crips continues to increase in the San Diego community. Their weapons of choice are handguns, rifles, and automatic or semiautomatic firearms; and they show little or no remorse for the victims of their violence.

23. Gang Defendants and DOES 101-200 have a history of unlawful conduct including but not limited to school discipline and juvenile criminal felony and misdemeanor convictions.

24. Gang Defendants and DOES 101-200 are known by the San Diego Police Department Gang unit as violent and dangerous gang members.

25. On or before April 29, 2006, Parents Defendants, and DOES 1-100, knew or should have known about the Gang Defendants' criminal felony and misdemeanor arrests, propensity for violence, unlawful conduct and dangerous gang related behavior.

26. In the evening of April 28, 2006, Parent Defendants, and DOES 1-100, granted Gang Defendants, and DOES 101-200, permission either implicit or express to leave their residence to join other Gang Defendants and DOES 101-200 to engage in unlawful, dangerous, gang-related behavior.

27. At all times herein mentioned, Defendants JAMES N. BUI, MAI VU and DOES 1-100 owned a silver/white 1998 Toyota Camry. In the evening of April 28, 2006, Defendants JAMES N. BUI, MAI VU and DOES 1-100 permitted Defendant CHRISTOPHER A. BUI to drive their silver/white 1998 Toyota Camry with other Gang Defendants and DOES 101-200 as his passengers.

28. At all times herein mentioned, Defendants MARY A. PHAM and DOES 1-100 owned a black 1998 Honda Accord. In the evening of April 28, 2006, Defendants MARY A. PHAM, and

-4-

*Sandra Case # 0753942*

1  DOES 1-100, permitted Defendant ROBERT PHAM to drive their black 1998 Honda Accord with

2  other Gang Defendants and DOES 101-200 as his passengers.

3    29. Upon leaving his residence, Defendant CHRISTOPHER A. BUI picked up other

4  Defendants JAMES A. NGUYEN, KEVIN HUA CHANG, TOMMY NGO, and XUAN PHONG

5  VU and DOES 101-200. Defendant ROBERT PHAM picked up Defendants DAVID VAN TRAN and

6  TAM THE HUYNH and DOES 101-200.

7    30. Defendants JAMES N. BUI, MAI VU, MARY A. PHAM, and DOES 1-100, granted

8  permission either implicit or express to Defendants CHRISTOPHER A. BUI and ROBERT PHAM to

9  drive the vehicles with other Gang Defendants as passengers until the morning hours of April 29, 2006.

10    31. Defendant CHRISTOPHER A. BUI drove the silver/white 1998 Toyota Camry

11  knowing Defendant JAMES A. NGUYEN, his passenger, unlawfully carried a silver Kimber .40

12  caliber semi-automatic handgun with a black rubber grip.

13    32. On or about April 29, 2006, Gang Defendants and DOES 101-200, knew Defendant

14  JAMES A. NGUYEN unlawfully had in his possession one silver Kimber .40 caliber semi-automatic

15  handgun with a black rubber grip.

16    33. On April 29, 2006, at approximately 1:00 AM, both vehicles met up at the parking lot

17  of a closed Fuddruckers in Mira Mesa. The cars followed each other and traveled east on Mira Mesa

18  Boulevard to the stop light before the Interstate 5 exit. Plaintiff JAYCE BALDWIN traveled in the

19  same direction in a Land Rover sports utility vehicle with his brother Plaintiff RYAN BALDWIN as

20  his passenger in the front seat. As they approached the intersection, Plaintiff JAYCE BALDWIN

21  stopped his vehicle. Defendant CHRISTOPHER A. BUI stopped his vehicle to the right side of

22  Plaintiffs' vehicle. Defendant ROBERT PHAM stopped his vehicle directly behind Plaintiffs.

23    34. Defendants CHRISTOPHER A. BUI, JAMES A. NGUYEN, TOMMY NGO, KEVIN

24  HUA CHANG and XUAN PHONG VU began yelling at Plaintiffs with profane, threatening and

25  intimidating language. Before the light turned green, Defendants CHRISTOPHER A. BUI, JAMES A.

26  NGUYEN, TOMMY NGO, KEVIN HUA CHANG and XUAN PHONG VU made gang hand

27  signals and gestures to Defendants ROBERT PHAM, DAVID VAN TRAN, and TAM THE HUYNH.

28  Gang Defendants, and DOES 101-200, who understood the signals and gestures as an agreement to

-5-

*Sandra case # 0753942*

1   fight, threaten, intimidate, and physically injure Plaintiffs, or other unlawful behavior.

2       35. Gang Defendants, DOES 101-200, and each of them, agreed to follow Plaintiffs'

3   vehicle with the intent to fight, threaten, intimidate, and physically injure Plaintiffs.

4       36. Gang Defendants, DOES 101-200, and each of them, followed Plaintiffs to the front

5   entrance of Plaintiffs' apartment complex located at 9900 Scripps Vista Way, San Diego, CA. Plaintiff

6   JAYCE BALDWIN stopped his car at the entrance to prevent Gang Defendants and DOES 101-200

7   from knowing the location of the apartment where he and his brother Plaintiff RYAN BALDWIN

8   resided.

9       37. Gang Defendants and DOES 101-200, exited the vehicles, threw an object at Plaintiffs,

10  and yelled profane, threatening and intimidating language while they approached Plaintiffs.  Gang

11  Defendants and DOES 101-200, yelled, among other profanities, "Asian Crips," "You fucked with the

12  wrong people," and surrounded Plaintiffs with the intention to fight and physically injure Plaintiffs.

13      38. Plaintiff RYAN BALDWIN saw Defendant JAMES A. NGUYEN point the silver

14  Kimber .40 caliber semi-automatic handgun with a black rubber grip at him and his brother. Plaintiffs

15  RYAN BALDWIN and JAYCE BALDWIN immediately walked back to the Land Rover and entered

16  the vehicle.  Plaintiff JAYCE BALDWIN sat in the driver's seat while Plaintiff RYAN BALDWIN sat

17  in the front passenger seat.

18      39. While Plaintiffs tried to exit, Defendant JAMES A. NGUYEN began shooting the silver

19  Kimber .40 caliber semi-automatic handgun with a black rubber grip at Plaintiffs RYAN BALDWIN

20  and JAYCE BALDWIN.   Approximately four or five bullets entered the Land Rover.  One bullet

21  pierced Plaintiff RYAN BALDWIN in the back hitting his spine.  Immediately, Plaintiff RYAN

22  BALDWIN'S legs went numb.   He then yelled at his brother that he had been shot and told him to

23  drive to the hospital.  Plaintiff RYAN BALDWIN could feel his seat getting wet and cold from his

24  blood.  He felt pain in his back and slumped over.  Plaintiff JAYCE BALDWIN witnessed these events

25  and drove as fast as he could to the nearest hospital.  Plaintiff JAYCE BALDWIN suffered and

26  continues to suffer severe emotional distress, mental suffering, anger, frustration, depression, loss of

27  control, vulnerability, loss of enjoyment of life, inconvenience, anxiety, humiliation, and pain and

28  suffering.

-6-

*Sandra   case # 0753942*

40. The gunshot in Plaintiff RYAN BALDWIN'S spine resulted in immediate paralysis from his chest down. The bullet ripped through his spinal canal eliminating 75-85% of his spinal cord. Plaintiff RYAN BALDWIN underwent several surgeries to remove the bullet from his spine and insert seven titanium rods in his back to hold his spinal cord together. Doctors also repaired his vertebra with bone from his hip and spinal fusions from level T-2 to T-7. He was wheelchair bound for 9 months. He underwent extensive recovery and rehabilitation measures including pain management and physical therapy. He suffered through 24 hour a day pain at the highest levels, 75% loss of use of his legs and deterioration of his muscles. Plaintiff RYAN BALDWIN was admitted to the hospital for over one year until approximately May 28, 2007. Upon his discharge, he could not stand on his own, walked with a cane and began the struggle to regenerate and use the muscle in his legs. Today, Plaintiff Ryan is still recuperating from his life threatening injuries. Plaintiff RYAN BALDWIN suffered and continues to suffer severe loss earnings, lost of earning capacity, emotional distress, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, anxiety, humiliation, and pain and suffering.

**FIRST CAUSE OF ACTION**
**BATTERY**
**(Against All Gang Defendants and DOES 101-200)**

41. Plaintiff RYAN BALDWIN realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

42. The shooting of Plaintiff RYAN BALDWIN constituted harmful and offensive contact with Plaintiff's person, to which he did not consent, and such contact caused Plaintiff to suffer injury, damage, loss and/or harm, and consequently each and every contact was a battery.

43. All Gang Defendants and DOES 101-200, conspired, aided, abetted, and enticed, encouraged, and agreed to the batteries upon Plaintiff RYAN BLADWIN.

44. The batteries committed by the Gang Defendants, and DOES 101-200, and each of them, on Plaintiff were in conscious disregard of the rights of Plaintiff, and constituted oppression, fraud, and/or malice against Plaintiff, such that Plaintiff is entitled to exemplary and punitive damages from Defendants and each of them, in an amount sufficient to punish and set an example of them.

-7-

*Sandra case # 0753942*

45. As a result of such batteries, Defendants and each of them are liable to Plaintiff for damages, including but not limited to, actual damages and exemplary/punitive damages.

### SECOND CAUSE OF ACTION
### ASSAULT
### (Against All Gang Defendants and DOES 101-200)

46. Plaintiffs RYAN BALDWIN and JAYCE BALDWIN reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

47. The assaults by Gang Defendants and DOES 101-200 against Plaintiffs included unlawful attempts to commit violent injuries on Plaintiffs, where Plaintiffs reasonably believed that they were about to be touched in a harmful and an offensive manner without their consent.

48. All Gang Defendants and DOES 101-200, conspired, aided, abetted, and enticed, encouraged, and agreed to the assaults upon Plaintiffs RYAN BALDWIN and JAYCE BALDWIN.

49. Plaintiffs were harmed and/or offended by Defendants' conduct.

50. Defendants' intention to cause an offensive and harmful touching was a substantial factor in causing Plaintiff's harm.

51. The assaults committed by the Defendants, and each of them, on Plaintiff were in conscious disregard of the rights of Plaintiff, and constituted oppression, fraud, and/or malice against Plaintiff, such that Plaintiff is entitled to exemplary and punitive damages from Defendants and each of them, in an amount sufficient to punish and set an example of them.

52. As a result of the assaults, Defendants and each of them are liable to Plaintiff for damages, including but not limited to, actual damages and exemplary/punitive damages.

### THIRD CAUSE OF ACTION
### CONSPIRACY
### (Against All Gang Defendants and DOES 101-200)

53. Plaintiffs RYAN BALDWIN and JAYCE BALDWIN reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

54. At all times herein mentioned, Gang Defendants and DOES 101-200, were aware that the other Gang Defendants, and DOES 101-200, planned to fight, threaten, intimidate, and physically injure Plaintiffs, or other unlawful behavior.

55. Gang Defendants and DOES 101-200 agreed, enticed, aided, abetted, coerced and

-8-

The Garrett Law Firm
Attorneys at Law

COMPLAINT FOR DAMAGES

*Sandra Case # 0753942*

1  intended to fight, threaten, intimidate, and physically injure Plaintiffs, or other unlawful behavior.

2      56. The conspiracy committed by the Defendants, and each of them, on Plaintiffs were in

3  conscious disregard of the rights of Plaintiffs, and constituted oppression, fraud, and/or malice against

4  Plaintiffs, such that Plaintiffs are entitled to exemplary and punitive damages from Defendants and

5  each of them, in an amount sufficient to punish and set an example of them.

6      57. As a result of such conspiracy, Defendants and each of them are liable to Plaintiffs for

7  damages, including but not limited to, actual damages and exemplary/punitive damages.

8                          FOURTH CAUSE OF ACTION
                               NEGLIGENCE
9                      (Against All Defendants and DOES 1-200)

10     58. Plaintiffs RYAN BALDWIN and JAYCE BALDWIN reallege and incorporate by

11 reference each preceding paragraph as though fully set forth herein.

12     59. All Defendants and DOES 1 through 200 owed a duty to Plaintiffs RYAN BALDWIN

13 and JAYCE BALDWIN to act reasonably so as not to cause harm to them. Defendants and DOES 1

14 through 200 acted negligently and their negligence was a substantial factor in causing harm to

15 Plaintiffs RYAN BALDWIN and JAYCE BALDWIN

16     60. As a direct and proximate result of the Defendants' negligence, Plaintiffs RYAN

17 BALDWIN and JAYCE BALDWIN have suffered, and continue to suffer, extreme economic, physical

18 and personal injuries and emotional distress.

19     61. As a direct and proximate result of the negligence of Defendants, Plaintiffs RYAN

20 BALDWIN suffered extreme physical injury and emotional injury which resulted in extensive medical

21 treatment, with further complication, home health care, and disfigurement, physical impairment and

22 pain.

23     62. As a direct and proximate result of the negligence of Defendants, Plaintiffs RYAN

24 BALDWIN and JAYCE BALDWIN suffered and continue to suffer mental suffering, loss of enjoyment

25 of life, inconvenience, anxiety, humiliation, emotional distress, and pain and suffering.

26     63. As a further direct and proximate result of the negligent conduct of Defendants, and

27 each of them, Plaintiffs RYAN BALDWIN and JAYCE BALDWIN were compelled to incur expenses

28 for services of hospitals, physicians, surgeons, nurses and other professional services in an amount to

                                         -9-
The Gomes Law Firm
Attorneys at Law
                              COMPLAINT FOR DAMAGES

*Sandra case # 0753942*

1  be shown according to proof. Upon information and believe, Plaintiffs will also be forced to incur

2  additional medical expenses in the future in an amount to be shown according to proof at trial.

3      64. As a direct and proximate result of the negligence of Defendants, Plaintiff RYAN

4  BALDWIN has sustained and will sustain additional economic loss, including, but not limited to, past

5  and future lost earnings and future earning capacity, and other specific damages, in an amount to be

6  determined according to proof at trial.

## FIFTH CAUSE OF ACTION
## NEGLIGENT SUPERVISION & CONTROL
### (Against All Parent Defendants and DOES 1-100)

9      65. Plaintiffs RYAN BALDWIN and JAYCE BALDWIN reallege and incorporate by

10  reference each preceding paragraph as though fully set forth herein.

11      66. The Parent Defendants, and DOES 1-100, and each of them, are the parents, caretakers,

12  guardians, or otherwise persons having custody and control of the Gang Defendants, and had the

13  opportunity and ability to prevent the shooting by the Gang Defendants against Plaintiffs, and the

14  Parent Defendants, and DOES 1-100, and each of them, knew or should have known of the history and

15  course of conduct of the Gang Defendants that foreseeably resulted in the shooting, and yet the Parent

16  Defendants, and DOES 1-100, and each of them, failed to exercise reasonable care in the supervision

17  and control of the Gang Defendants, and/or failed to take reasonable precautions to prevent such a

18  shooting by the Gang Defendants, and consequently the Parent Defendants, and DOES 1-100, and each

19  of them are liable for negligent supervision and control of the Gang Defendants.

20      67. As a result of such negligent supervision and control of the Gang Defendants, the Parent

21  Defendants, and DOES 1-100, and each of them, are liable to Plaintiffs for their damages.

## SIXTH CAUSE OF ACTION
## NEGLIGENT ENTRUSTMENT OF A MOTOR VEHICLE
### (Against Defendants James Bui, Mai Vu, Mary A. Pham, and DOES 1-100)

24      68. Plaintiffs RYAN BALDWIN and JAYCE BALDWIN reallege and incorporate by

25  reference each preceding paragraph as though fully set forth herein.

26      69. At all times herein mentioned Defendant CHRISTOPHER BUI was negligent in

27  operating and using a 1998 silver/white Toyota Camry sedan owned by Defendants JAMES BUI and

28  MAI VU and DOES 1-100.

-10-

Sandra Case # 0753942

1      70. At all times herein mentioned Defendant ROBERT PHAM was negligent in operating

2  and using a 1998 Black Honda Accord owned by Defendants MARY A. PHAM and DOES 1-100.

3      71. At all times herein mentioned Defendants JAMES BUI and MAI VU and DOES 1-100

4  knew or should have known that Defendant CHRISTOPHER BUI would operate and use the 1998

5  silver/white Toyota Camry sedan for unlawful, dangerous, gang-related behavior.

6      72. At all times herein mentioned Defendants MARY A. PHAM and DOES 1-100 knew or

7  should have known that Defendant ROBERT PHAM would operate and use the 1998 black Honda

8  Accord for unlawful, dangerous, gang-related behavior.

9      73. At all times herein mentioned Defendants JAMES BUI and MAI VU and DOES 1-100

10  permitted Defendant CHRISTOPHER BUI to use the 1998 silver/white Toyota Camry sedan for

11  unlawful, dangerous, gang-related behavior was a substantial factor in casing harm to Plaintiffs.

12      74. At all times herein mentioned Defendants MARY A. PHAM and DOES 1-100

13  permitted Defendant ROBERT PHAM to use the 1998 black Honda Accord for unlawful, dangerous,

14  gang-related behavior was a substantial factor in casing harm to Plaintiffs.

15      75. As a result of such imputed liability, Defendants JAMES BUI, MAI VU, MARY A

16  PHAM and DOES 1-100, are liable for damages for the injuries to Plaintiffs RYAN BALDWIN and

17  JAYCE BALDWIN.

18            **SEVENTH CAUSE OF ACTION**
            **VIOLATION OF CAL. VEHICLE CODE §17150**
19      (Against Defendants James N. Bui, Mai Vu, and Mary A. Pham, and DOES 1-100)

20      76. Plaintiffs RYAN BALDWIN and JAYCE BALDWIN reallege and incorporate by

21  reference each preceding paragraph as though fully set forth herein.

22      77. At all times herein mentioned Defendant CHRISTOPHER BUI was negligent in

23  operating and using a 1998 silver Toyota Camry sedan owned by Defendants JAMES BUI and MAI

24  VU and DOES 1-100.

25      78. At all times herein mentioned Defendant ROBERT PHAM was negligent in operating

26  and using a 1998 BLACK Honda Accord owned by Defendants MARY A. PHAM and DOES 1-100.

27  ///

28  ///

-11-

COMPLAINT FOR DAMAGES

11/28/2007 17:41 FAX  7703032    ZC STERLING    Ø 016/070
Nov 29 07 10:09a    p.14

Sandra Case # 0753942

79. At all times herein mentioned Defendant CHRISTOPHER BUI had permission, express or implied of Defendants JAMES BUI and MAI VU and DOES 1-100 to operate or use the motor vehicle.

80. At all times herein mentioned Defendant ROBERT PHAM had permission, express or implied of Defendants MARY A. PHAM and DOES 1-100 to operate or use the motor vehicle.

81. At all times herein mentioned Defendant CHRISTOPHER BUI'S negligence in operating or using the 1998 silver Toyota Camry sedan resulted in harm to Plaintiffs RYAN BALDWIN and JAYCE BALDWIN.

82. At all times herein mentioned Defendant ROBERT PHAM'S negligence in operating or using the 1998 black Honda Accord resulted in harm to Plaintiffs RYAN BALDWIN and JAYCE BALDWIN.

83. As a result of such imputed liability, Defendants JAMES BUI, MAI VU, MARY A. PHAM and DOES 1-100, are liable for damages in an amount $30,000 for the injuries to Plaintiffs RYAN BALDWIN and JAYCE BALDWIN under Cal. Vehicle Code §17151(a).

### EIGHTH CAUSE OF ACTION
### VIOLATION OF CAL. VEHICLE CODE §17708
(Against All Defendants Mary Pham, and DOES 1-100)

84. Plaintiffs RYAN BALDWIN and JAYCE BALDWIN reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

85. At all times herein mentioned, Defendant ROBERT PHAM was a minor who acted negligent in operating and using a 1998 Honda Accord resulting in Plaintiffs' harm.

86. Defendant ROBERT PHAM'S negligence was a substantial factor in causing the harm to Plaintiffs.

87. Defendants MARY A. PHAM and DOES 1-100, parents or the person or guardian having custody of Defendant ROBERT PHAM, by words or conduct, gave Defendant ROBERT PHAM express or implied permission to operate or use the 1998 Honda Accord.

88. As a result of such imputed liability, Defendants MARY A. PHAM and DOES 1-100, are liable for damages for the injuries to Plaintiffs RYAN BALDWIN and JAYCE BALDWIN.

///

-12-

*Sandra Case # 0753942*

## NINTH CAUSE OF ACTION
### VIOLATION OF CAL. CIVIL CODE §1714.1
#### (Against All Parent Defendants and DOES 1-100)

89. Plaintiffs RYAN BALDWIN and JAYCE BALDWIN reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

90. The shooting by the Gang Defendants against Plaintiffs constituted acts of willful misconduct by minors under the custody and control of some of the Parent Defendants, and DOES 1-100, and such acts resulted in injury to Plaintiffs, and consequently such Parent Defendants have imputed liability to Plaintiffs for such a shooting under Cal. Civil Code §1714.1.

91. As a result of such imputed liability, each of the Parent Defendants, and DOES 1-100, is liable for damages in an amount not to exceed $25,000 for each and every act of willful misconduct against Plaintiffs by the Gang Defendants.

## TENTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
#### (Against All Defendants and DOES 1-200)

92. Plaintiffs RYAN BALDWIN and JAYCE BALDWIN reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

93. Defendants, and each of them, knew, or should have known, that their failure to exercise due care would cause Plaintiffs severe emotional distress.

94. The acts or omissions of Defendants, and DOES 1-200, inclusive, constitute a breach of duty towards Plaintiffs.

95. As a direct and proximate result of Defendants, and DOES 1-200, inclusive, acts or omissions, Plaintiffs have suffered and will continue to suffer serious emotional distress, including, but not limited to, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

## ELEVENTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS- BYSTANDER
#### (Against All Defendants and DOES 1-200)

96. Plaintiff JAYCE BALDWIN realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

97. Defendants, and each of them, negligently caused injury to Plaintiff RYAN BALDWIN.

-13-

COMPLAINT FOR DAMAGES

*Sandra Case # 0753942*

98. Plaintiffs JAYCE BALDWIN and RYAN BALDWIN are brothers who reside and at all times herein mentioned have resided together in the same home.

99. Plaintiff JAYCE BALDWIN was present at the scene of the injury when it occurred and was aware that Plaintiff RYAN BALDWIN was being injured.

100.    Plaintiff JAYCE BALDWIN suffered serious emotional distress.

101.    The conduct of Defendants, and each of them, was a substantial factor in causing Plaintiff JAYCE BALDWIN's severe emotional distress.

## TWELFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (Against All Gang Defendants and DOES 101-200)

102.    Plaintiffs RYAN BALDWIN and JAYCE BALDWIN reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

103.    The conduct of Gang Defendants, DOES 101-200, and each of them, was outrageous. Gang Defendants' conduct was so extreme that it goes beyond all possible bounds of decency. Gang Defendants' conduct was outrageous in that a reasonable person would regard the conduct as intolerable in a civilized community.

104.    Gang Defendants, DOES 101-200, and each of them, knew that their conduct would likely result in harm due to mental distress and gave little or no thought to the probable effects of their conduct.

105.    Plaintiffs suffered severe emotional distress, including but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

106.    Gang Defendants' outrageous conduct was a substantial factor in causing Plaintiff's severe emotional distress.

107.    Gang Defendants' extreme and outrageous conduct was done with a willful and knowing disregard of Plaintiffs' rights. Gang Defendants and their agents and employees, and each of them, were aware of the probable dangerous consequences of their conduct and willfully and deliberately failed to avoid those consequences. Gang Defendants' conduct was mean, vile and contemptible as to be looked down on and despised by reasonable people. Gang Defendants' conduct

///

-14-

*Sandra Case # 0753942*

1    was malicious, oppressive and/or fraudulent, and therefore, Plaintiffs are entitled to punitive damages

2    in an amount sufficient to punish Defendants and deter similar conduct in the future.

3    <center>PRAYER FOR RELIEF</center>

4    WHEREFORE, Plaintiffs RYAN BALDWIN and JAYCE BALDWIN pray for judgment

5    against all Defendants, and each of them, as follows:

6    **AS TO THE FIRST THROUGH THIRD, AND TWELFTH CAUSES OF ACTION:**

7    1. For general damages in an amount to be proven at trial;

8    2. For special damages in an amount to be proven at trial;

9    3. For punitive damages in an amount to be proven at trial;

10    3. For attorneys fees as permitted by law;

11    4. For interest as permitted by law;

12    5. For costs of suit; and

13    6. For such other and further relief as the Court deems proper.

14    **AS TO THE FOURTH THROUGH SIXTH, EIGHTH, TENTH AND ELEVENTH CAUSES OF**

15    **ACTION:**

16    1. For general damages in an amount to be proven at trial;

17    2. For special damages in an amount to be proven at trial;

18    3. For attorneys fees as permitted by law;

19    4. For interest as permitted by law;

20    5. For costs of suit; and

21    6. For such other and further relief as the Court deems proper.

22    **AS TO THE SEVENTH CAUSE OF ACTION:**

23    1. For an award of damages under Cal. Vehicle Code §17151 (a) in an amount of $30,000

24    payable as imputed liability by each Defendants JAMES BUI, MAI VU, and MARY A. PHAM, and

25    DOES 101-200, for the injuries to Plaintiffs.

26    2. For attorneys fees as permitted by law;

27    3. For interest as permitted by law;

28    4. For costs of suit; and

-15-

COMPLAINT FOR DAMAGES

11/29/2007 17:42 FAX 7703032    ZC STERLING    @020/070
p.18
Nov 29 07 10:10a

*Sandra Case # 0753942*

5. For such other and further relief as the Court deems proper.

### AS TO THE NINTH CAUSE OF ACTION:

1. For an award of damages under Cal. Civil Code §1714.1 in an amount of not more than $25,000 payable by each Parent Defendant of Gang Defendants for each and every act of willful misconduct against Plaintiffs by those Gang Defendants who were under the supervision, custody or control of such Parent Defendants.

2. For attorneys fees as permitted by law;

3. For interest as permitted by law;

4. For costs of suit; and

5. For such other and further relief as the Court deems proper.

### JURY DEMAND

Plaintiffs demand a jury trial for all claims so triable.

Dated: November 13, 2007

THE GOMEZ LAW FIRM

By:

John H. Gomez
Maria F. Palmieri
Attorneys for Plaintiffs

-16-

COMPLAINT FOR DAMAGES

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Empire Fire & Marine Insurance Company | **FILED** <br> James Nguyen; Binh Huu Nguyen; Diane Hoa Nguyen; Ryan Baldwin; Jayce Baldwin; and Does 1 through 200, inclusive. |

**(b)**   County of Residence of First Listed Plaintiff   **Nebraska**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **California**
2008 JAN 10  PM 2: 56
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)
Andrew N. Kohn, Esq., SBN 166385, Pettit Kohn Ingrassia & Lutz PC, 12250 El Camino Real, Suite 350, San Diego, CA 92130; (858) 755-8500

Attorneys (If Known)  BY _____ K.M.K _____ DEPUTY

**'08 CV 0056 IEG AJB**

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question
   (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☒ 4   Diversity
   (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers' Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury | **PERSONAL INJURY** <br> ☐ 362 Personal Injury - Med. Malpractice <br> ☐ 365 Personal Injury - Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 610 Agriculture <br> ☐ 620 Other Food & Drug <br> ☐ 625 Drug Related Seizure of Property 21 USC 881 <br> ☐ 630 Liquor Laws <br> ☐ 640 R.R. & Truck <br> ☐ 650 Airline Regs <br> ☐ 660 Occupational Safety/Health <br> ☐ 690 Other <br> **LABOR** <br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt.Reporting & Disclosure Act <br> ☐ 740 Railway Labor Act | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 840 Trademark <br> **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 810 Selective Service <br> ☐ 850 Securities/Commodities/ Exchange <br> ☐ 875 Customer Challenge 12 USC 3410 <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 444 Welfare <br> ☐ 445 Amer. w/Disabilities - Employment <br> ☐ 446 Amer. w/Disabilities - Other <br> ☐ 440 Other Civil Rights | **PRISONER PETITIONS** <br> ☐ 510 Motions to Vacate Sentence <br> **Habeas Corpus:** <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 892 Economic Stabilization Act <br> ☐ 893 Environmental Matters <br> ☐ 894 Energy Allocation Act <br> ☐ 895 Freedom of Information Act <br> ☐ 900 Appeal of Fee Determination Under Equal Access to Justice <br> ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332 and 28 U.S.C. section 2201
Brief description of cause:
Declaratory Relief

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $  exceeds $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE
01/10/2008

SIGNATURE OF ATTORNEY OF RECORD
_(signature)_

**FOR OFFICE USE ONLY**

RECEIPT #  14630     AMOUNT  $350 - 1/10/08 IEG     APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 146301    — BH

January 10, 2008
14:57:58

Civ Fil Non-Pris
USAO #.: 08CV0056 CIVIL FILING
Judge..: IRMA E GONZALEZ
Amount.:                    $350.00 CK
Check#.: BC#S 6183,35795

Total-> $350.00

FROM: EMPIRE FIRE & MARINE V. NGUYEN
      ET AL
      CIIVL FILING